UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| ROBERT REED, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 20-158-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAMPBELL COUNTY, KENTUCKY, et al., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of the parties' motions *in limine*. Plaintiff Robert Reed has filed a motion seeking to prevent the defendants from offering evidence of "the subjective beliefs, perceptions and opinions of Officers Curtis and Gray during the events leading to and following the warrantless entry into the Reed home, the officers' use of force, Reed's arrest/detention and search of his person." [Record No. 79] Because the relevant inquiry is that of a reasonable officer in the defendants' positions, Curtis and Gray's subjective beliefs are irrelevant and will be excluded.

Next, the defendants seek to exclude various categories of evidence including evidence concerning Gray's subsequent termination from the Campbell County Police Department; any discipline of Curtis or Gray that occurred before or after the incident at Reed's residence; other lawsuits filed against Curtis or Gray; and any medical records and testimony based on such records. [Record No. 80] Most of the issues raised in the defendants' motion are moot, as Reed has tendered a response indicating that he does not intend to offer such evidence at trial.

However, the defendants' motion will be denied insofar as it seeks to preclude Reed from offering evidence of emotional harm.

## I.  Background

The Campbell County dispatch center received a 911 call from an individual identified as "Jennifer" on the night of April 11, 2020. The caller reported that the people living behind her might have been having a domestic disturbance and that she could hear "yelling" and "hitting" from her backyard. She gave the 911 dispatcher the address of 7 South Cottonwood. The dispatcher then advised the police: "7 South Cottonwood for a domestic. Caller's advising it sounds like they're outside (inaudible) verbal and physical."

Campbell County Police Officers Michael Curtis and Kyle Gray responded to 7 South Cottonwood, which is Plaintiff Reed's residence.[1] The officers did not observe anything out of the ordinary upon their arrival at the residence or after walking around the sides of the house. Curtis and Gray then went to the front porch and Gray knocked on the door. Curtis, who could see through a window, advised Gray that he could see "a guy coming to the door" and "a female in the back bedroom." Curtis later testified during his deposition that the woman "seemed kind of standoffish, kind of timid," but he did not express this to Gray at the time. [Record No. 31, p. 83]

Reed answered the door. Gray asked Reed if he would mind stepping outside and talking to the officers. Reed responded by asking whether Gray had a warrant. Gray replied that he did not. When Reed asked why the officers were there, Gray stated that "somebody

---

[1] The summary of events is based on footage from Curtis and Gray's body worn cameras, which was tendered as evidence in support of the parties' cross-motions for summary judgment. [*See* Record Nos. 42, 44.]

called and said that somebody was fighting and arguing over here." Reed responded, "Wasn't here. Sorry, Officer." Gray then asked whether anyone else was in the house. Reed said, "yes, but do you got a warrant?" Again, Gray responded that he did not. Reed told Gray he did not want to deal with officers in his house, did not know who called 911, and did not really care.

As Reed remained inside his doorway, Gray insisted on speaking with any other adults in the house and told Reed "it's called exigent circumstances." Reed responded, "If you don't have a warrant, goodbye," and proceeded to close the door. Gray warned him, "don't do that." At that point, Curtis joined Gray and kicked the door down. Curtis shouted, "open the goddamn door!" and entered the home. He then drew his firearm and briefly pointed it at Reed's head. Curtis then put the gun away and pulled Reed onto the porch by his arm. The officers led Reed to his driveway and detained him as Reed's wife stood on the porch explaining, "it's not our house—we've been inside all night."

Other officers arrived on the scene and spoke with various members of Reed's family. Once the officers were satisfied that everyone inside the house was safe, they documented the damage to Reed's door and left. No arrests were made nor citations issued in connection with the incident.

Reed filed suit on November 9, 2020, alleging that the defendants violated his Fourth Amendment rights to be free from illegal search, false arrest, and excessive force, as well as state-law claims for assault and battery and false arrest.[2] The Court determined that the

---

[2] Reed also asserted claims for intentional infliction of emotional distress, punitive damages, and under *Terry v. Ohio*, 392 U.S. 1 (1968) and *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) but summary judgment was granted in favor of the defendants on these claims August 17, 2022. [Record No. 61]

defendants are not entitled to qualified immunity with respect to these claims and the Sixth Circuit affirmed the Court's decision on interlocutory appeal. *Reed v. Campbell Cnty.*, 80 F.4th 734 (6th Cir. 2023). A jury trial is scheduled to begin on March 27, 2024.

## II. Reed's Motion

Plaintiff Reed has filed a motion *in limine* seeking to prevent the defendants from offering evidence of "the subjective beliefs, perceptions and opinions of Officers Curtis and Gray during the events leading to and following the warrantless entry" into his residence. Specifically, the plaintiff seeks to exclude any reference to Curtis's observation of a "timid" woman and the officers' speculation that Reed could have been armed. On appeal, the Sixth Circuit noted that Curtis's "perception of timidity" was "purely subjective" and conveyed "no emergency or imminent risk or harm which could justify not applying for a search warrant." *Reed*, 80 F.4th at 745. The court also declined to credit the "officer's subjective fear that an individual has a weapon where objective indicia are absent." *Id.* at 748-49.

The exigent circumstances doctrine recognizes that there may be situations where law enforcement officials are presented with a compelling need to conduct a search but do not have time to secure a warrant. *Michigan v. Tyler*, 436 U.S. 499, 509 (1978); *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003). The doctrine has been applied to situations that pose a danger to the officers or to others. *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994).

When determining whether exigent circumstances exist to justify a warrantless search, courts conduct an objective review by asking whether a reasonable officer would have believed that there was a compelling reason to act and there was no time to obtain a warrant. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 999

(6th Cir. 1994). The officers' subjective beliefs about the search in question are irrelevant. *See Anderson*, 483 U.S. at 641. Rather, the assessment of exigency must be based on the belief of a reasonable officer under the circumstances, which is an objective standard. *See id.* This determination is made based on the totality of the facts and circumstances as they would have appeared to a reasonable person in the officer's position. *Id.*

Here, the parties agree on the law but appear to disagree on its interpretation. The defendants cite *United States v. Goins*, 2022 WL 17078875 (6th Cir. Nov. 18, 2022), in which an officer was permitted to testify that a woman inside a home had an "alleged look of discomfort on [her] face" as well as "body language conveying discomfort." They also cite *Crabbs v. Pitts*, 817 F. App'x 208 (6th Cir. 2020), in which an officer was permitted to testify that a suspect appeared evasive and agitated.

To be sure, the defendant officers may testify regarding their objective observations that led to the warrantless entry of Reed's residence, their use of force, and Reed's subsequent detention. If the officers made observations leading them to conclude that the woman was timid or that Reed might have been armed, they may testify regarding those observations. Such information will permit a jury to determine whether a reasonable officer in the defendants' positions would have believed that exigent circumstances were present. However, the defendants may not testify regarding subjective beliefs that are speculative or otherwise unsupported by factual observations.

### III. The Defendants' Motion

The defendants contend that Reed should be precluded from presenting any evidence of damages arising from emotional distress. In support, they contend that Reed did not provide a computation of the amount of such damages, nor did he produce any supporting documents.

When asked to provide such information during discovery, Reed reported that his answer would be "supplemented after receipt of complete medical records." The defendants assert that Reed failed to supplement the information. Reed responds that while he was not required to disclose an amount for such damages, he supplemented his discovery production with an estimate of emotional distress damages on November 29, 2023.

Reed argues that damages for emotional distress are not susceptible to any form of computation or calculations and, therefore, are not covered by Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure. Indeed, district courts within the Sixth Circuit have routinely observed that emotional damages are difficult to quantify and are not subject to the type of calculation required for initial disclosure purposes. *See Wolff v. Maybach Int'l Grp., Inc.*, 2023 WL 3602810, at *2 (E.D. Ky. Apr. 4, 2023); *Scheel v. Harris*, 2012 WL 3879279, at *7 (E.D. Ky. Sept. 6, 2012). Further, neither expert nor treating physician testimony is required and Reed may support his claim for emotional distress damages with his own testimony. *See Indiana Ins. Co. v. Demetre*, 527 S.W.3d 12, 39 (Ky. 2017) (limiting requirement of expert medical or scientific proof to claims of intentional or negligent infliction of emotional distress); *Barrios v. Elmore*, 430 F. Supp. 3d 250 (W.D. Ky. 2020) (observing that "[e]motional distress may be proven by direct or circumstantial evidence, including the plaintiff's testimony alone).

The remaining portions of the defendants' motion *in limine* are rendered moot by Reed's response wherein he asserts that he does not intend to introduce evidence of Gray's termination; Gray or Curtis' disciplinary history; other lawsuits against Gray or Curtis; his medical records; or evidence of medical expenses. Reed reserves the ability to move for admission of evidence concerning the defendants' termination and/or disciplinary proceedings for impeachment purposes should the defendants first introduce evidence of good character.

The defendants apparently have no objection to considering admissibility of this evidence for impeachment purposes (if necessary) during trial, as neither party filed a reply to the motions *in limine*.

### IV.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Plaintiff Robert Reed's motion *in limine* [Record No. 79] is **GRANTED**.

2. Defendants Michael Curtis and Kyle Gray's motion *in limine* [Record No. 80] is **DENIED**.

Dated: January 11, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky